**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Joshua J. Hurd

   v.                                 Civil No. 07-cv-165-SM

FNU Granville, et al.[1]

**O R D E R**

Pro se plaintiff Joshua Hurd has filed a complaint, pursuant to 42 U.S.C. § 1983, alleging that the defendants subjected him to unconstitutional punishment and unconstitutionally punishing conditions of confinement, in violation of his Fourteenth Amendment rights (doc. no. 1). The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted. See 28 U.S.C. § 1915A; United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2). For the reasons explained below, I find that Hurd has sufficiently alleged a denial of his

---

[1] The named defendants to this action are Hillsborough County Department of Corrections ("HCDC") employees: Corrections Officer ("C.O.") Granville (first name unknown ("FNU")), C.O. FNU Williams, HCDC Sgt. FNU Lacerte, HCDC Cpt. FNU Dion, and HCDC Superintendent James O'Mara.

Fourteenth Amendment rights to allow his complaint to proceed against the named defendants to this action.

### Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review. LR 4.3(d)(2). In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." See Castro v. United States, 540 U.S. 375, 381 (2003) (noting that courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997) (same). All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as

true.  See id.  This review ensures that pro se pleadings are given fair and meaningful consideration.

## Background

1. The June 16, 2004 Incident

Between February 21, 2004 and January 7, 2005, Hurd was a pretrial detainee incarcerated at the Hillsborough County Department of Corrections ("HCDC").  On June 16, 2004, Hurd was being held in Unit 2B at the HCDC when Corrections Officer ("C.O.") Granville and another officer came to his cell in order to temporarily transfer Hurd to a new cell.  Granville and the other officer directed Hurd to move to the back of his cell.  Hurd stated that he wanted an HCDC Sargeant to be present during his cell move.  The officers ignored Hurd's request.  Consistent with HCDC policy, Hurd moved to the back of his cell and faced the wall while the officers entered his cell.  Hurd complied with all of the officers' directions.  Granville placed Hurd in handcuffs.  Granville then lifted Hurd's arms forward, intentionally "forcing his face to bounce off the wall" and then struck Hurd in the face with his hand.  Hurd states that at the time Granville assaulted him, he was being entirely compliant, he

was handcuffed, and the assault was therefore entirely unprovoked.

Hurd was transported to his temporary cell by Granville and the other officer. During the transport, Granville used a joint manipulation technique on Hurd's wrists, designed to cause pain, called a "double ninety." Hurd claims that during the transport, he did nothing to provoke that action and nothing that merited a forceful response by the officers. As a result of the force inflicted upon him during his cell move, Hurd suffered cuts, bruises, and substantial pain to his lip, his face, and the back of his head.

Once Hurd was placed in his temporary cell, he asked to see a sargeant and for medical attention for his injuries. Granville responded by telling Hurd: "Don't be a baby. Deal with it." Granville did not call a sargeant or request medical attention for Hurd. Eventually, another inmate caused a problem on the unit and Sargeant Lacerte responded. Hurd was then able to speak to Lacerte, who secured medical attention for Hurd.

2.  <u>The August 9, 2004 Incident</u>

On August 9, 2004, Granville, Lacerte, and C.O. Williams entered Hurd's cell to again transfer him to a new cell. Once

again, Hurd complied with all of the directions the officers gave him, and moved to the back of his cell and faced the wall. During the transport, Granville and Williams both used the "double ninety" pain compliance technique on Hurd, even though he had already complied with all of their orders.  In order to maximize the pain of the technique, Hurd claims, the officers actually lifted him off the floor and carried him in the manipulated position.

Once Hurd was in his new cell, Granville ordered him to face the wall, which he did.  Granville then placed his hand on the back of Hurd's head and pushed his head into the wall.  Lacerte was still present during this incident, and did nothing to intervene to protect Hurd from the unnecessary assault.

Hurd requested medical attention.  Lacerte said that she would call the medical department, but the medical personnel at the HCDC were never notified of Hurd's request.  Hurd asserts that he suffered injuries including cuts, marks, swelling, and numbness as well as pain in his right wrist for months after the August 9 cell move.

3.   Post-Incident Allegations

Hurd filed grievances regarding both incidents with HCDC Cpt. Dion.  Dion met with Hurd and discussed the incidents.  Dion told Hurd that at least one of the incidents had been captured on videotape and agreed to keep a copy of the tape for Hurd to use in a future lawsuit.  Dion, however, to Hurd's knowledge, took no corrective action after either incident.  Instead, Dion blamed Hurd for the assaults.  Further, Hurd indicates that he was placed in punitive segregation as a result of the two incidents.

In grieving these incidents, Hurd indicates that HCDC Superintendent James O'Mara was notified of the incidents and did nothing to remedy the situation.  As such, Hurd asserts that O'Mara, as the supervisor of the HCDC, bears responsibility for the harm alleged.[2]

---

[2] Hurd actually uses the term "official capacity" to describe O'Mara's liability as a supervisor.  Official capacity suits against county employees are actually suits brought against the municipality itself, and must allege that the harms asserted were the result of a municipal policy or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  Hurd makes no such allegation.  Generously construing the complaint, I find that Hurd's intention was to sue O'Mara in his individual capacity in his role as a supervisory officer at the HCDC and I will consider the claim accordingly.

Discussion

I.   Section 1983

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law.  See 42 U.S.C. § 1983[3]; City of Okla. City v. Tuttle, 471 U.S. 808, 829 (1985); Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  Here, Hurd claims that defendant HCDC employees are state actors, and that they violated his federal constitutional right not to be subjected to punishment during his pretrial confinement.  Hurd's claims arise, therefore, under § 1983.

---

[3] 42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

II.  Fourteenth Amendment

Detainees have a constitutional right under the due process clause of the Fourteenth Amendment to be free of punishment. See Surprenant v. Rivas, 424 F.3d 5, 15 (1st Cir. 2005) (citing O'Connor v. Huard, 117 F.3d 12, 15 (1st Cir. 1997)). "'[T]he State does not acquire the power to punish . . . until after it has secured a formal adjudication of guilt in accordance with due process of law.'" Martinez-Rivera v. Ramos, ___ F.3d ___, 2007 WL 2254586, *4 (1st Cir. 2007) (quoting Ingraham v. Wright, 430 U.S. 651, 671-72 n.40 (1977)). However, challenged conditions or restrictions which can be rationally related to some legitimate administrative goal or security concern generally will not be deemed unconstitutional "punishment." O'Connor, 117 F.3d at 15. The issue in evaluating claims by a pretrial detainee, therefore, is whether the conditions of confinement were reasonably related to a legitimate state interest or were intended instead as punishment. See Surprenant, 424 F.3d at 13; Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 317 (1st Cir. 1995).

Hurd alleges that, in violation of his Fourteenth Amendment rights, he was: (1) subjected to unprovoked excessive force by HCDC employees, (2) denied his right to be protected by HCDC

employees who were present when he was subjected to excessive force, (3) denied medical care, and (4) subjected to punitive conditions of confinement without cause.  I will address each of these claims in turn.[4]

   A.   Excessive Force

The Fourteenth Amendment protects a pretrial detainee from excessive force that amounts to punishment.  See O'Connor, 117 F.3d at 16; Garcia v. City of Boston, 115 F. Supp. 2d 74, 81 (D. Mass. 2000), aff'd, 253 F.3d 147 (1st Cir. 2001).  In determining whether a plaintiff has stated a claim for unconstitutionally excessive force, the court should look to the following four factors: (1) "the need for application of force," (2) "the relationship between the need and the amount of force that was used," (3) "the extent of injury inflicted," and (4) "whether the force was applied in good faith to maintain or restore discipline or maliciously and sadistically for the very purpose of inflicting harm."  Garcia, 115 F. Supp. 2d at 81.

Hurd alleges that on June 16, 2004, defendant Granville used excessive force when he hit his face on the cell wall, struck him

---

[4] The claims, as identified herein, shall be considered to be the claim raised in the complaint for all purposes.  If Hurd disagrees with the identification of the claims in this Order, he must file a motion to amend his complaint.

in the head, and used a "double ninety" compliance technique on him.  At the time, Hurd was handcuffed, was following orders, and was not resisting the officers or provoking the attack in any way.  Hurd further alleges that on August 9, 2004, Granville and Williams assaulted him without provocation.  While Hurd has not alleged extreme or life-threatening injuries from these assaults, he has alleged that he was cut and bruised, and suffered from months of pain and numbness.  Hurd alleges that the physical attacks by Granville and Williams were malicious and intended to cause him pain rather than to satisfy any legitimate penological goal or respond to any provocation on Hurd's part.  To support this, he cites, in addition to the facts concerning the use of significant force recounted above, a cavalier attitude on the part of defendant Granville toward Hurd's medical needs, and a refusal by defendants Granville and Lacerte to obtain medical care for Hurd after the attacks.

I find that Hurd has stated valid excessive force claims against Granville and Williams for assaulting him in his cell on two occasions and utilizing joint manipulation techniques designed to cause him pain without provocation.  Accordingly, I

direct service of the excessive force claims against Granville and Williams.

B.   Failure to Protect

The safety and security of all prisoners is protected by the constitution.  See DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 190 (1989); Youngberg v. Romeo, 457 U.S. 307, 315-16 (1982).  A state actor has a duty to protect incarcerated prisoners from harm by another state actor.  See DeShaney, 489 U.S. at 199, Davis v. Rennie, 264 F.3d 86, 98 (1st Cir. 2001).  An officer may be held liable under § 1983 "for his failure to intervene in appropriate circumstances to protect an arrestee from the excessive use of force by his fellow officers." See Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 n.3 (1st Cir. 1990); see also McHenry v. Chadwick, 896 F.2d 184, 188 (6th Cir. 1990) (prison guard has a duty to protect a prisoner from the use of excessive force by another prison guard).  The obligation of law enforcement officers to protect arrestees encompasses a requirement that pretrial detainees be protected by prison employees.  See Gaudreault, 923 F.2d at 207 n.3.

Hurd alleges that he was physically assaulted by Granville and Williams in the presence of Lacerte.  Hurd claims that

11

although Lacerte witnessed the attack and the fact that it was unprovoked, she did nothing to intervene or protect Hurd in any way.  Accordingly, I find that Hurd has alleged sufficient facts to state a failure to protect claim against Lacerte and I will direct the claim to be served upon her accordingly.

### C.   Conditions of Confinement

In examining Hurd's allegations that he was denied non-punitive conditions of confinement, I consider whether the questioned conditions were reasonably related to a legitimate state interest or were intended instead as punishment.  See Collazo-Leon, 51 F.3d at 317.  Hurd alleges that, after the assaults, he was subjected to punitive conditions of confinement at the HCDC, even though he was a pretrial detainee and had not committed any act while at the jail which was deserving of punishment.

First, Hurd alleges that he was denied immediate medical attention after the assaults.  Hurd claims there was no reason for Granville or Lacerte to deny his requests for medical attention, and that they did it, therefore, only to punish him. Second, Hurd alleges that Dion wrongly held him responsible for the incidents resulting in Hurd being assaulted, and that, as a

result, Hurd was placed in punitive segregation which is, by definition, punishment. I find that Hurd has alleged sufficiently punitive conditions of confinement, that were not occasioned by any provocation on his part, to state a claim for unconstitutionally punitive prison conditions against Granville, Lacerte and Dion.

IV.  Supervisory Liability

Hurd alleges that he filed grievances with Dion regarding the incidents alleged. Hurd claims that through these grievances, both Dion and HCDC Superintendent James O'Mara were put on notice of the unconstitutional treatment Hurd received at the HCDC, and failed to take any remedial action. Dion, to the extent he is responsible for investigating allegations of staff misconduct, and O'Mara, as the chief officer of the HCDC, are the individuals responsible for remedying unconstitutional occurrences and conditions at the HCDC, including, among other things, the improper treatment of inmates by staff, the provision of medical care, and the classification and disciplinary systems. Accordingly, I direct that the complaint be served on defendants Dion and O'Mara in their supervisory capacities.

result, Hurd was placed in punitive segregation which is, by definition, punishment. I find that Hurd has alleged sufficiently punitive conditions of confinement, that were not occasioned by any provocation on his part, to state a claim for unconstitutionally punitive prison conditions against Granville, Lacerte and Dion.

IV.  Supervisory Liability

Hurd alleges that he filed grievances with Dion regarding the incidents alleged. Hurd claims that through these grievances, both Dion and HCDC Superintendent James O'Mara were put on notice of the unconstitutional treatment Hurd received at the HCDC, and failed to take any remedial action. Dion, to the extent he is responsible for investigating allegations of staff misconduct, and O'Mara, as the chief officer of the HCDC, are the individuals responsible for remedying unconstitutional occurrences and conditions at the HCDC, including, among other things, the improper treatment of inmates by staff, the provision of medical care, and the classification and disciplinary systems. Accordingly, I direct that the complaint be served on defendants Dion and O'Mara in their supervisory capacities.

Conclusion

For the foregoing reasons, I find that Hurd has sufficiently alleged the minimum facts necessary to state the following claims: (1) excessive force claims against defendants Granville and Williams, (2) a failure to protect claim against Lacerte, and (3) unconstitutional conditions of confinement claims against Granville, Lacerte, Dion, and O'Mara.  Without further comment on the merits of the complaint, I order that it be served on defendants Granville, Williams, Lacerte, Dion, and O'Mara.  My review of the file indicates that Hurd has completed a summons form for each of the defendants.  The Clerk's office is directed to issue the summonses against defendants and forward to the office of the United States Marshal for the District of New Hampshire (the "U.S. Marshal's office"), for each defendant, the summonses, copies of the complaint (document no. 1), and copies of this Order.  Upon receipt of the necessary documentation, the U.S. Marshal's office shall effect service upon defendants.  See Fed. R. Civ. P. 4(c)(2).

Defendants are instructed to answer or otherwise plead within twenty days of service.  See Fed. R. Civ. P. 12(a)(1)(A).

   Plaintiff is instructed that all future pleadings, written motions, notices, or similar papers shall be served directly on the Defendants by delivering or mailing the materials to them or their attorney(s), pursuant to Fed. R. Civ. P. 5(b).

   **SO ORDERED.**

                                    _____
                                    James R. Muirhead
                                    United States Magistrate Judge

Date:   November 2, 2007

cc:     Joshua J. Hurd, pro se